Jennifer L. Marlowe STEPHENS,
Appellant,

v.

James MARLOWE, Appellee.

No. 06–99–00044–CV.

Court of Appeals of Texas,
Texarkana.

Submitted May 11, 2000.

Decided May 12, 2000.

Robert Foster, Longview, for appellant.

John G. Troy, Jr., Longview, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Jennifer L. Marlowe Stephens appeals a money judgment rendered in favor of her former husband, James Marlowe. Marlowe filed a petition seeking to partition certain proceeds Stephens received after their divorce. Marlowe contended that the proceeds had not been divided in the divorce action, and that he and Stephens owned the proceeds as tenants in common. The trial court agreed and partitioned the proceeds. In a single point of error, Stephens contends that the proceeds represented benefits relating to her retirement plan, and that they were awarded to her in the divorce action. We agree, and we reverse the judgment and render judgment for Stephens.

On April 6, 1989, Stephens and Marlowe were divorced by a final decree of divorce. On the date of their divorce, a class-action lawsuit was pending for the benefit of certain Continental Can employees, including

Stephens, who was employed by Continental Can for a period of time during her marriage. On December 19, 1990, after the divorce became final, the Continental Can lawsuit was settled, and Stephens was awarded $50,000.00. In late 1992, Marlowe received a letter informing him, as a former spouse of a former Continental Can employee, about the settlement. Believing he may be entitled to some of the proceeds, Marlowe filed a petition for a post-divorce partition of the proceeds and a request for a temporary injunction. The trial court, by a letter ruling, found that the divorce decree had not awarded the settlement proceeds and held that the proceeds were owned by the parties as tenants in common, with each party being entitled to receive $25,000.00.

In the Continental Can lawsuit, the plaintiffs charged that Continental Can and other aligned defendants,[1] through a nationwide scheme to avoid pension liabilities, prevented the plaintiffs from obtaining benefits under their pension plans in violation of the Employment Retirement Income Security Act of 1974 (ERISA). Stephens contends that the settlement proceeds she received as a result of her participation in the lawsuit are retirement-related benefits, which she is entitled to keep pursuant to a "catch-all" provision contained in the divorce decree. The provision on which she relies awarded her:

> Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past, present, or future employment, specifically including any IRA in the name of Petitioner.

Stephens contends that because the divorce decree, by way of the foregoing provision, disposed of the settlement proceeds, res judicata bars Marlowe's attempt to partition.

Marlowe contends that the settlement award Stephens received was community property that was not disposed of by the divorce decree. He contends that the award was community property because the Continental Can controversy involved benefits derived during the marriage by Stephens from her participation in the class-action lawsuit and also because the award was property owned by Stephens at the time of divorce. In the trial court, Marlowe contended that the settlement proceeds were not divided because the court granting the divorce did not consider the pending lawsuit when it divided the estate of the parties. He argued that based on testimony presented in the divorce, Stephens' retirement situation was vastly underrated and, in light of the large settlement Stephens ultimately received, equity should allow him to share in the proceeds. He also argued that, in any event, the proceeds were not wholly disposed of by the provision in the divorce decree because the proceeds represented not only money related to retirement benefits, but also lost wages, lost health insurance, loss of earning capacity, damages for emotional distress, and other consequential damages.

 Res judicata applies to a final divorce decree to the same extent that it applies to any other final judgment. Baxter v. Ruddle, 794 S.W.2d 761, 762 (Tex. 1990). If an appeal is not perfected, res judicata bars a subsequent collateral attack. Id. However, where community property was not divided as part of the community division in a divorce, that community property is held by the former spouses as tenants in common. In that situation, res judicata does not apply, and partition is an appropriate remedy to effectuate a post-divorce division of the property. Wilde v. Murchie, 949 S.W.2d

---

1. The defendants stipulated that a judgment against one would be a judgment against all.

331, 332 (Tex.1997); *Harrell v. Harrell*, 692 S.W.2d 876, 876 (Tex.1985); *Busby v. Busby*, 457 S.W.2d 551, 554–55 (Tex.1970); *In re Marriage of Taylor*, 992 S.W.2d 616, 619 (Tex.App.-Texarkana 1999, no pet.).

■ Because the divorce decree was not a consent or an agreed judgment, the trial court in this action was controlled by the rules relating to construction of judgments. *Acosta v. Acosta*, 836 S.W.2d 652, 654 (Tex.App.-El Paso 1992, writ ref'd). Thus, if taken as a whole the decree is unambiguous, no room is left for interpretation, and the effect of the judgment is a question of law for the court to decide in light of the literal meaning of the language used. *Wilde v. Murchie*, 949 S.W.2d at 332; *Acosta v. Acosta*, 836 S.W.2d at 654; *Lohse v. Cheatham*, 705 S.W.2d 721, 726 (Tex.App.-San Antonio 1986, writ dism'd). In contrast, if the decree is ambiguous, the court must interpret the judgment by reviewing both the decree as a whole and the record to ascertain the property's disposition. *Wilde v. Murchie*, 949 S.W.2d at 332–33; *Lohse v. Cheatham*, 705 S.W.2d at 726.

■ The divorce decree did not specifically mention the pending lawsuit or settlement proceeds. However, the decree is unambiguous on its face in awarding Stephens all of her retirement benefits and all rights related to any of her retirement plans. The decree provided that Stephens receive,

> Any and all sums, *whether matured or unmatured, accrued or unaccrued, vested or otherwise,* together with all increases thereof, the proceeds therefrom, and *any other rights related to* any profit-sharing plan, *retirement plan,* pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past, present, or future employment....

(Emphasis added.) Neither party argues that the provision is ambiguous. Stephens argues that it unambiguously awards the settlement proceeds; Marlowe argues that it unambiguously does not. The dispositive issue is whether Stephens' right to the settlement proceeds was a right related to her retirement. We conclude that it was.

■ In the class-action lawsuit, the court found that as a result of Continental Can's pervasive scheme, class members, numbering approximately 5,000, were denied *pension benefits* to which they otherwise would have been entitled. At the conclusion of the trial, the court appointed a special master to assist the parties in the settlement of remaining issues and to expedite a determination of the amounts due class members. After the parties settled the suit for $415 million, the special master was appointed trustee of the settlement fund and was charged with the task of developing a plan of distribution. Eventually, he developed and implemented a plan whereby class members were awarded a portion of the settlement fund based on their years of employment and closeness to vesting. He determined that Stephens was entitled to a lump sum payment of $50,000.00 and another $50,000.00 to be distributed monthly, although at the time of the partition hearing the monthly distribution had not yet commenced. The distribution plan also provided that the settlement awards would include an amount of money for the decline in an employee's earning capacity resulting from premature layoffs.

The divorce decree, the court's judgment and the settlement agreement from the class-action lawsuit, and the special master's plan of distribution are in the record before us. From those documents, we conclude that, as a matter of law, the settlement proceeds awarded to Stephens were related to her retirement plan that existed by *reason of her employment* at Continental Can. We so conclude, because the settlement proceeds Stephens received represented her retirement benefits and related sums, albeit in another form, to which the court determined Stephens would have been entitled had she not been

prematurely discharged. To the extent that the settlement proceeds represented Stephens' retirement benefits and related sums, the divorce decree effectuated a disposition of the proceeds.

Marlowe, however, contends the divorce court did not "consider" or account for the proceeds when it rendered judgment. Cases involving post-divorce partition actions have recognized that post-divorce partition is appropriate where the divorce decree does not "consider," "contemplate," or "purport to dispose of" the property, or where property has been "overlooked" and, as a result, has gone undivided. *See Wilde v. Murchie,* 949 S.W.2d at 333; *Law v. Law,* 792 S.W.2d 150, 152 (Tex.App.-Houston 1990, writ denied); *Isenberg v. Isenberg,* 510 S.W.2d 364, 365 (Tex.Civ. App.-San Antonio 1974, no writ); *Thompson v. Thompson,* 500 S.W.2d 203, 208–09 (Tex.Civ.App.-Dallas 1973, no writ); *Howle v. Howle,* 422 S.W.2d 252, 255–56 (Tex.Civ. App.-Tyler 1967, no writ). It has been held that for *res judicata* to apply, not only must the divorce decree have effected a disposition of the asset, but also the court must have considered the asset and intended to divide it. *Cf. Moreno v. Alejandro,* 775 S.W.2d 735, 739 (Tex.App.-San Antonio 1989, writ denied). However, we have found no case in which the language of the divorce decree clearly disposed of the asset, but the court actually failed to consider the asset. Instead, in *Thompson* for example, the court did not know of the asset in question, and therefore the divorce decree, which itemized the property without mentioning the asset in question, failed to accomplish a division of that asset. *See Thompson v. Thompson,* 500 S.W.2d at 207–09.

▮ In some cases the decree's language may be broad enough to indicate that the court "considered" the property even though it did not actually take note of the specific asset. *See Acosta v. Acosta,* 836 S.W.2d at 654, where the court held that an award of "any retirement benefits" included stock the appellee received due to

his participation in a stock plan, but which the divorce court did not actually consider. Here, the court used a catch-all provision by which it awarded Stephens *all of her retirement benefits and all rights related to her retirement plans.* Thus, the decree clearly indicates that the court intended for Stephens to be awarded all sums related to her retirement. That Stephens received these benefits as a result of a settlement rather than receiving a standard retirement benefit does not alter the decree's clear intention to award the benefits.

▮ Nevertheless, we are unwilling to foreclose the possibility that there may be a circumstance where a divorce decree's language effects a disposition of the asset even though the court may not have taken note of the property. Marlowe contends that, based on testimony presented in the divorce, Stephens' retirement situation was vastly undervalued. But Marlowe has failed to demonstrate that the court granting the divorce failed to consider the settlement proceeds. Marlowe, as the party requesting partition, had the burden to prove in the partition action that the divorce court did not consider or dispose of the settlement proceeds. The divorce decree is contained in the appellate record and announces that the record of testimony was duly recorded, but Marlowe in his partition action failed to include in the record the evidence produced in the divorce trial. The record here shows that Marlowe introduced the following evidence in the partition suit: (1) the special master's response to Marlowe's request for disclosure of the amount of Stephens' settlement share; (2) a letter to Marlowe giving him notice that Stephens, as a class member in the lawsuit, would be entitled to settlement proceeds, which Marlowe introduced because the letter stated that the plaintiffs claimed various damages; and (3) amendments to the special master's proposed plan of distribution. This evidence does not show that the divorce court failed to consider the retirement-related settle-

ment proceeds. Nor does the evidence show that any portion of the settlement award was unrelated to the pension plan. Instead, the record reflects that class members were awarded a portion of the settlement fund based on their years of employment and closeness to vesting, and another portion based on their decline in earning capacity. The award for the decline in earning capacity is not unrelated to the pension plan.

The broad language of the divorce decree disposed of "any and all sums" and "any other rights" related to Stephens' pension plan by awarding them to Stephens. The settlement agreement of the class-action lawsuit awarded a sum of money to Stephens, and all others similarly situated, based solely on their participation in the Continental Can pension program. Surely, the award constitutes money and rights related to the pension plan. Moreover, the fact that Stephens' rights to the proceeds in lieu of her pension benefits were vested or acquired by her only after the divorce does not defeat her right to them. The disposition provision in the divorce decree expressly covers all sums matured or unmatured, accrued or unaccrued, vested or otherwise, as well as all increases and proceeds therefrom.

Because Marlowe failed to submit sufficient evidence in his partition suit to show that the divorce court did not consider the settlement proceeds in making its property division, or that the award included an amount unrelated to Stephens' retirement, Marlowe did not carry his burden to show that the proceeds were partitionable in whole or in part.

Accordingly, we reverse the judgment of the trial court and render judgment that the benefits of the settlement belong to Stephens pursuant to the divorce decree.