Hugh Dorry WILLIAMSON, Appellant,

v.

Lillie Maurine WILLIAMSON, Appellee.

No. 11769.

Court of Civil Appeals of Texas, Austin.

July 29, 1970.

Rehearing Denied Aug. 31, 1970.

Clinton & Richards, Sam Houston Clinton, Jr., Austin, for appellant.

Small, Herring, Craig, Werkenthin & Shannon, C. C. Small, Jr., Austin, for appellee.

O'QUINN, Justice.

This is a divorce proceeding in which the sole question on appeal is whether the trial court correctly awarded an interest in two retirement plans to the wife.

Appellant, Hugh Dorry Williamson, sued appellee for divorce and for partition of community property in event the parties failed to divide their property by agreement.

The trial court, without intervention of a jury, commenced trial of this cause on December 12, 1969, recessed the hearing to January 2, 1970, and on that date rendered judgment granting a divorce and partitioning certain real and personal community property between the parties. The trial court severed and continued for later hearing the issue of partition of the interest of the community estate in two retirement plans.

The court heard the separate issue on February 3, 1970, and that day awarded to the wife an interest in the two retirement plans according to a formula set forth in the judgment. Appellant was awarded all interests in the two plans save that awarded the wife.

Both parties excepted and gave notice of appeal. The husband alone perfected an appeal, and brings error under two points. The first point is error in awarding appellee an interest in the retirement plans according to the formula prescribed in the judgment, and the second point is error in awarding appellee any interest whatever in the two plans.

We overrule both points and affirm judgment of the trial court.

Hugh Dorry Williamson, appellant, and Lillie Maurine Williamson, appellee, were married on July 17, 1943, and lived together continuously, except for a short period in July, 1965, until October 9, 1965, when they separated and thereafter lived apart. Appellant filed suit for divorce May 26, 1969, under paragraph (4) of Article 4629, Vernon's Anno.Civ.Sts., which provides that divorce may be decreed if the spouses have lived apart without cohabitation for as long as three years. (See sec. 3.06, ch. 3, subch. A, Family Code, Vernon's Tex.Codes Anno.; Acts 1969, 61st Leg., ch. 888, ef-

fective January 1, 1970). The trial court dissolved the marriage on this ground.

Appellant on January 1, 1955, was in the employment of a labor organization that entered into an agreement and declaration of trust establishing a "staff retirement plan" in which appellant shared as an employee. Thereafter, by reason of appellant's position in the labor organization, the trustees of the Iron Workers Pension Fund, a different retirement plan, decided in October, 1968, to provide coverage under that plan for appellant effective April 1, 1968.

Under the first plan, appellant was a beneficiary of a retirement plan, known as the Bridge and Iron Workers Staff Retirement Plan, to which he had contributed $6,499.25 out of his earnings and to which his employer had contributed $10,604.75 as of December 1, 1969.

Under the second plan, appellant was a beneficiary of a pension plan, designated the Iron Worker's Pension Fund, that went into effect in 1968, but which took into account prior service extending back to 1942. Appellant testified that his participation in the pension fund was on account of services he performed during marriage. Appellant also testified that he understood that this plan "presently covered" him, but that coverage was contingent upon "whether or not the Executive Council of the Iron Worker's International Union agrees that we can be covered under the plan."

Appellant and two other staff workers were included in the pension plan by trustees of the Iron Workers Pension Fund, coverage to be effective April 1, 1968, as we have already observed, but apparently this action was subject to final approval by the Executive Council referred to by appellant. The pension plan was for the benefit of members of various locals of the union. Appellant had been a member of one or more of the locals during the entire marriage, and when he was included in the coverage in 1968 he received credit for his prior membership in the locals.

Both the staff retirement plan and the workers' pension fund provided that benefits could commence at age fifty-five. Appellant was born May 15, 1914, and reached age fifty-five on May 15, 1969. Under the staff retirement plan the normal retirement age was sixty-two.

The trial court made no distinction between the two retirement plans in partitioning the benefits of the plans to the parties. The pertinent portions of the judgment making partition are set out:

" * * * the Court * * * is of the opinion and finds that as an employee plaintiff [appellant] is entitled to certain benefits in each of two retirement plans * * * Bridge and Iron Workers Staff Retirement Plan and Iron Workers' Pension Fund originally adopted November 9, 1964, pursuant to an agreement and declaration of trust dated November 26, 1964, that the interest in each such pension plan is community property of the plaintiff and the defendant and that it would be fair, just and equitable to divide * * * that interest * * * into equal parts without any regard to * * * the division * * * of other community property * * * heretofore divided * * * and that under the circumstances the most effective way to accomplish an equal division and partition of the interest in each such retirement plan is the following award * *

" * * * that Lillie Maurine Williamson be and she is hereby awarded as her part and share in each of said retirement plans a $\frac{13}{26}$th interest in the benefits paid or to be paid under the plan if, as and when benefits paid or to be paid while plaintiff is fifty-five years of age; provided, however, that at the beginning of each year of the anniversary of the birth of plaintiff hereafter the fractional interest of defendant shall be reduced proportionately until benefits become payable or until plain-

tiff shall cease to accumulate credited service under each such plan, or until plaintiff becomes sixty-two years of age, whichever occurs sooner, so that, for example, on May 15, 1970 defendant's fractional interest shall be 13/27ths, on May 15, 1971, 13/28ths and so on in a like manner until May 15, 1976 when defendant's fractional interest shall be and thereafter remain 13/33rds * * *"

The judgment further provided that appellant be awarded as his "* * * share in each of said retirement plans all interests therein save and except that interest hereinabove awarded to defendant."

The Supreme Court has held that property acquired by the husband during marriage is community property subject to distribution in divorce proceedings to both the husband and the wife unless the property was acquired by gift, devise or descent. Herring v. Blakeley, 385 S.W.2d 843 (Tex. Sup.Ct.1965). Interests in both the staff retirement plan and the pension fund were acquired during marriage, and no contention is made that either interest was acquired by devise or descent.

But appellant contends that his interest in the pension fund "* * * was gratuitously provided in October 1968—three years after the parties had permanently separated." Appellant testified that the plan was for the benefit of members of certain local unions, that he had been a member of one or more locals throughout the marriage, and that when coverage was accorded him in 1968 he was given credit for prior membership in the locals.

■ The doctrine is well established in Texas that existence or non-existence of the marriage at the time of incipiency of the right by which title finally vests determines whether the property is community or separate. Jackson v. Jackson, 258 S.W. 231 (Tex.Civ.App., Waco, 1924, no writ); Bryan v. Bryan, 262 S.W.2d 736 (Tex.Civ.App., Texarkana, 1953, writ ref.

n. r. e.). The doctrine was applied by the Supreme Court in 1908 to acquisition of land by a married couple under homestead laws requiring occupancy for three years before title could be matured. Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911. In that case the wife died before the end of the three years, and the husband remarried during the three years and completed occupancy with the second wife and obtained a patent. The Supreme Court held that the land belonged to the community estate of the first marriage because "* * * the status of title, as belonging to one estate or the other, is determined by the status of the original right, subsequently matured into full title." 109 S.W. 913, col. 1.

■ Appellant's rights under both the retirement plan and the pension fund had their origin during his marriage to appellee, and when he reached age fifty-five, also during the marriage, whatever right he had in the two plans ripened and related back to incipiency of the right. It is immaterial that appellant and appellee were living apart at the time the two retirement plans matured for appellant and at the time appellant was included in the pension fund plan. Sec. 5.02, Texas Family Code; formerly Art. 4619, V.A.T.S. The record does not disclose any separation agreement between the parties, nor was there any agreement affecting division of the community estate.

■ It is settled that retirement benefits and pension plan benefits of the husband are earned property rights belonging to the community estate and are distributable to the wife when the marriage is dissolved, even though payment under the plans may be contingent and are to take place, if at all, in the future. Herring v. Blakeley, supra, 385 S.W.2d 846–847. The rule has been applied in Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App., San Antonio, 1968, writ dsmd.); Webster v. Webster,

442 S.W.2d 786 (Tex.Civ.App., San Antonio, 1969, no writ).

█ Appellant contends that the formula used by the trial court in making distribution of the two retirement plans " * * * awarded to Appellee * * * substantially more than an equal share * * * " The formula employed by the court awarded one half of the benefits that would be payable as of the time appellant became fifty-five years of age, which was the first time benefits could commence. The fraction used by the court was $^{13}/_{26}$ths, or one half the years of marriage. From this base, the court decreed proportionate reduction for additional years of credit after dissolution of the marriage by increasing the denominator of the fraction by one for each additional year, until appellant should reach age sixty-two, the normal retirement age, or until benefits should become payable, or the husband should cease to accumulate credited service, whichever should occur sooner.

█ The trial court had before him testimony as to "present value" of the retirement benefits, but the court did not fix a present cash value and make distribution on that basis. Instead the court awarded appellee a share in future payments, "if, as and when made." The trial court has a wide discretion in dividing the property of spouses upon dissolution of the marriage and usually can make such division as the court considers right and just. The trial court's judgment in such matters will not be reversed without a showing of abuse of this discretion.

We do not find from the record of this case an abuse of discretion by the trial court in making distribution of the retirement and pension benefits in the judgment. Duncan v. Duncan, 374 S.W.2d 800 (Tex.Civ.App., Eastland, 1964, no writ), and authorities cited.

The judgment of the trial court is affirmed.