

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00055-CV

_____

DIANE MADDOX, Appellant

V.

WINDA LOU CINDY MADDOX, Appellee

On Appeal from the County Court at Law #1
Angelina County, Texas
Trial Court No. 16,147

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM  OPINION

After more than forty years of marriage, R.V. Maddox and Winda Lou Cindy Maddox ("Cindy") divorced, and the trial court judgment explicitly awarded R.V. and Cindy each one-half of the yearly[1] payments from an employee savings plan[2] that had accumulated while R.V. had worked for Champion International Corporation.  R.V. later married Diane Maddox.  After R.V.'s death ten years later, the corpus remaining in the employee savings plan, $139,188.12, was paid to Diane, R.V.'s widow.   Cindy filed suit against Diane in Angelina County,[3] claiming that, pursuant to the divorce decree, one-half of the plan's corpus was rightfully hers.   The trial court agreed with Cindy and awarded her one-half of that corpus, or the amount of $69,594.06.

Diane appeals, contending that federal law applies, passing the plan's corpus to R.V.'s estate and that the unambiguous language of the divorce decree awards the corpus to R.V.  We affirm the trial court's decision because:   (1) ERISA issues were not preserved for our review, and (2) the decree left the corpus undivided.

---

[1]The decree's payment provisions reference both yearly and monthly payments from the plan.   The parties dispute the significance of this discrepancy, but it is irrelevant to the issue of the plan's corpus.

[2]The plan is referred to in the decree as the "Champion Savings Plan," as well as "Champion Savings Plan pin number 3336."

[3]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

*(1)    ERISA Issues Were Not Preserved for Our Review*

Diane contends that, because there was no qualified domestic relations order (QDRO) entered in this case, the Employee Retirement and Income Security Act (ERISA) applies; that, under its provisions, she is the proper beneficiary of R.V.'s savings plan; and that the trial court erred in awarding half of it to Cindy.   The issue, however, was not raised below and, thus, is not before us.

A party may raise a point of error regarding ERISA for the first time on appeal if the specific issue, such as pre-emption, implicates the subject-matter jurisdiction of the court.   *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545 (Tex. 1991); *Great N. Am. Stationers*, *Inc. v. Ball*, 770 S.W.2d 631 (Tex. App.—Dallas 1989, writ dism'd).   Otherwise, a party must affirmatively set forth the argument pursuant to Rule 94 of the Texas Rules of Civil Procedure and must raise the issue at trial, or else it is waived.   *See Gorman*, 811 S.W.2d at 546; *see also* TEX. R. APP. P. 33.1(a).

Here, Diane argues that ERISA applies and that, under its provisions, she is entitled to the remainder of R.V.'s employee savings plan.   Diane's claim involves participants' and beneficiaries' rights and contract construction and falls under ERISA's grant of jurisdiction to the state courts.   *See* 29 U.S.C.A. §§ 1055(c)(2), 1132(a)(1)(B), (e) (West, Westlaw through 2011). Under such an argument, ERISA would not operate to deprive the state trial court of jurisdiction. Rather, ERISA would merely alter the law that the court would apply to the case.   Had ERISA's

applicability been raised before the trial court, the resulting issue would concern a potential conflict between the Texas law of community property and the federal law of beneficiaries, assignment, and alienation under ERISA.[4] But Diane's failure to assert ERISA at trial waives the argument, and ERISA issues with respect to the distribution of the savings plan funds were not preserved for our review. *See* TEX. R. APP. P. 33.1(a).

*(2)* *The Decree Left the Corpus Undivided*

The trial court found that Cindy was entitled to one-half of the value of the corpus as of the time of R.V.'s death. On appeal, both Cindy and Diane argue that the decree is clear and unambiguous, but they disagree on how the decree treats the plan's corpus. Diane contends that the decree awards the corpus of the savings plan to R.V. Cindy contends that "it is much more reasonable to assume that the decree attempted to divide" the plan's corpus between R.V. and herself. Cindy also argues that, if we conclude that the decree failed to divide the plan's corpus, that corpus was undivided community property and is, thus, jointly owned by R.V. and Cindy. We are constrained to adopt this third alternative.

"An agreed divorce decree is a contract subject to the usual rules of contract interpretation." *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also McCollough v. McCollough*, 212 S.W.3d 638, 642 (Tex. App.—Austin 2006, no pet.) (alimony agreements and other marital property agreements, even when incorporated into divorce decrees, are enforceable as contracts and governed by contract law). In construing an

---

[4]*See Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001); *Barnett v. Barnett*, 67 S.W.3d 107, 122–23 (Tex. 2001).

agreement, we must first determine whether the contract is clear and unambiguous, or whether its enforcement requires parol evidence. *J.M. Davidson*, *Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Guerrero v. Guerrero*, 165 S.W.3d 778, 782 (Tex. App.—San Antonio 2005, no pet.). If, however, a contract is capable of more than one reasonable interpretation, it is ambiguous.[5] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Guerrero*, 165 S.W.3d at 782. Whether a contract is ambiguous is a question of law that we review de novo. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker*, 650 S.W.2d at 393. To achieve this objective, we should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* We presume that the parties to a contract intend every clause to have some effect, and we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res.*, *Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Unless the contract is ambiguous, the court will enforce it as written. *Id.* A court may

---

[5]Merely because the parties argue different interpretations does not make an agreement ambiguous. *Guerrero*, 165 S.W.3d at 782.

5

not rewrite the parties' contract or add to its language under the guise of interpretation. *Schaefer*, 124 S.W.3d at 162.

Here, the decree awards R.V. one-half of the yearly payments from the savings plan and orders him to pay the remaining one-half of each yearly payment to Cindy:

> One-half of the yearly checks from Champion Savings Plan . . . held in the name of R.V. Maddox, pin number 3336 which are made payable to R.V. Maddox. IT IS ORDERED that R.V. Maddox shall be the designated constructive trustee for the benefit of WINDA LOU CINDY MADDOX for the remaining one-half of the monthly checks and R.V. MADDOX is ordered to pay to WINDA LOU CINDY MADDOX one-half of the monthly amount received by R.V. MADDOX within ten (10) days of the receipt of each check.

A similar provision specifically awards Cindy one-half of each yearly payment from the savings plan:

> One-half of the amount of the yearly check from Champion Savings Plan . . . held in the name of R.V. Maddox, pin number 3336 which are made payable to R.V. Maddox, to be paid to WINDA LOU CINDY MADDOX within ten (10) days of the receipt of each monthly check by R.V. Maddox.

The provision at issue is the decree's employment-benefit catch-all provision that awards R.V. any and all "other benefits existing by reason of [R.V.'s] past, present, or future employment except the Champion Savings Plan pin number 3336 as set forth above." There is no specific distribution of, or reference to, the plan's corpus.

Diane contends that the corpus of the Champion Savings Plan passes to R.V. under the employment-benefit catch-all provision. Cindy argues that the decree divided the corpus equally between R.V. and herself, or, in the alternative, that the decree leaves the corpus undivided.

6

Here, the decree is unambiguous, and therefore, "our responsibility is to construe the decree as written" and apply its literal language, because the court has no authority to alter or modify the original disposition of property. *Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex. 2003); *Shanks*, 110 S.W.3d at 448; *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.—Texarkana 2003, pet. denied). While the decree distributes the yearly payments from the plan, it does not provide for the plan's corpus. No language in the decree can reasonably be interpreted to distribute one-half of the corpus to Cindy. Nor can the decree's language reasonably be interpreted to distribute the corpus to R.V. Benefits from the plan are specifically excluded from the employment-related benefits passing to R.V. under the employment-benefit catch-all provision. When the catch-all provision is read as a whole, the phrase "as set forth above" is merely a reference to previous distributions from the plan, rather than a limitation on the properties excluded from the catch-all, as is argued by Diane. Therefore, the corpus is left undivided by the decree.

Here, the trial court properly found that "[t]he final decree disposed of 'the yearly checks' from the Champion Savings Plan, pin number 3336 but did not otherwise reference or distinguish 'the yearly checks' from any balance or residuary of the savings plan." The effect of the decree's language leaves the corpus, a piece of community property,[6] undivided.[7]

---

[6]It was undisputed that the funds in the savings plan at the time of R.V.'s death were community property.

[7]Citing our decision in *Stephens v. Marlowe*, Diane contends that we must presume that the decree partitioned all the community estate. 20 S.W.3d 250, 254 (Tex. App.—Texarkana 2000, no pet.). *Marlowe*, however, creates no such

7

When a decree of divorce does not dispose of all community property, the former husband and wife become cotenants or joint owners of the property, and either former spouse may then bring suit to divide the "overlooked" piece of community property. *Harrell v. Harrell*, 692 S.W.2d 876 (Tex. 1985); *In re Marriage of Notash*, 118 S.W.3d 868 (Tex. App.—Texarkana 2003, no pet.); *Burgess v. Easley*, 893 S.W.2d 87 (Tex. App.—Dallas 1994, no writ). The trial court properly construed the decree and was within its discretion in awarding Cindy one-half of the plan's corpus. *See* TEX. FAM. CODE ANN. § 9.201 (Vernon 2006) (subsequent suit regarding undivided marital property), § 9.203(a) (Vernon 2006) (divide undivided marital property "in a manner that the court deems just and right, having due regard for the rights of each party . . . .").

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 8, 2011
Date Decided:       March 9, 2011

---

presumption, but rather reaffirms that the party "requesting partition [of community property], had the burden to prove" that the previous divorce proceedings and decree "did not consider or dispose of" the property at issue. *Id.* In this case, no one disputed that Cindy had the burden of proving that the decree did not dispose of the plan's corpus.